```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION


TRENNIS W. CHAPMAN,               :
                                  :
     Plaintiff,                   :
                                  :
vs.                               :
                                  :   CIVIL ACTION 15-0085-M
CAROLYN W. COLVIN,                :
Social Security Commissioner,     :
                                  :
     Defendant.                   :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12). The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 21). Oral argument was waived in this action (Doc. 23). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further administrative procedures not inconsistent with the Orders of this Court.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-seven years old, had completed a ninth-grade education (Tr. 42), and had previous work experience as a construction worker and laborer (Tr. 56). Chapman alleges disability due to arthritis of the right knee, a history of degenerative disk disease of the lumbar spine, possible ulnar nerve entrapment of the right hand, and obesity (Doc. 12 Fact Sheet).

The Plaintiff applied for SSI benefits on February 7, 2012, alleging a disability onset date of August 15, 2010 (Tr. 19, 128-36). An Administrative Law Judge (ALJ) denied benefits, determining that although he could not return to his past relevant work, Chapman was capable of performing specific light work jobs (Tr. 19-34). Plaintiff requested review of the hearing decision (Tr. 14-15), but the Appeals Council denied it

(Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Chapman alleges that: (1) The ALJ did not properly consider the medical evidence, substituting his opinion for those of the doctors; (2) the ALJ improperly determined that several of his impairments were not severe; (3) the ALJ failed to consider his obesity; and (4) he is unable to perform light work (Doc. 12). Defendant has responded to—and denies—these claims (Doc. 17). The Court will now summarize the relevant evidence of record.

Treatment records from the Federal Bureau of Prisons show that Chapman was treated, generally, for morbid obesity, GERD, asthma, and hypertension (*see generally* Tr. 263-564). On November 5, 2010, Plaintiff was seen for his mental health after having gained some "inner comfort" from taking Amitriptyline[1] and Risperdal;[2] he had a diagnosis of unspecified psychosis and was estimated to have a GAF score of 71-100 (Tr. 373-74). On March 24, 2011, Chapman complained of bilateral knee pain, but had full range of motion (hereinafter *ROM*) in both knees (Tr. 298, 492-94). The pain was thought to be exacerbated by prolonged standing and was suggested to be secondary to osteoarthritis and

---

[1] *Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression. *Physician's Desk Reference* 3163 (52nd ed. 1998).
[2] *Risperdal* is used "for the management of the manifestations of psychotic disorders." *Physician's Desk Reference* 1310-13 (52nd ed. 1998).

3

worsened by his obesity. On March 30, 2011 x-rays of the knees were negative except for moderate degenerative joint disease, greatest in the patellofemoral (Tr. 550). On June 20, Plaintiff received a corticosteroid injection for bilateral knee pain (Tr. 485-88). On December 7, 2011, a chest x-ray was negative (Tr. 543).

On February 27, 2012, Chapman went to University of South Alabama Medical Center (hereinafter *USAMC*) where he was diagnosed to have diabetes mellitus type 2 and was treated for uncontrolled hypertension (Tr. 568-92). A chest x-ray showed no acute chest disease with lung changes consistent with chronic airways disease.

On March 10, Plaintiff was admitted to Mobile Infirmary Medical Center, through the Emergency Room, for a week following complaints of dizziness, syncope, general weakness, emesis, and profound dehydration (Tr. 593-609). On musculoskeletal examination, Chapman had normal ROM with no edema or tenderness (Tr. 600). Dr. Prince C. Uzoije diagnosed him to have a urinary tract infection and adjusted his overall medication regimen.

On April 11, Plaintiff was seen at Franklin Primary Health Center, Inc. (hereinafter *Franklin PHC*) for complaints of chronic lower back pain and bilateral knee pain (Tr. 619-23). A lumbar spine x-ray showed lower lumbar facet arthropathy and marked degenerative changes of the L5-S1 disc; x-rays of the

4

knees showed mild degenerative changes bilaterally (Tr. 623).

On May 11, 2012, non-examiner Whitney McCants, a Single Decision Maker (hereinafter *SDM*) for the Social Security Administration reviewing the evidence of record as of that date, completed a residual functional capacity evaluation indicating that Chapman was capable of lifting and carrying up to ten pounds frequently and twenty pounds occasionally (Tr. 67-68, 72; *see generally* Tr. 60-72).  Plaintiff could stand or walk and sit six hours a day; he was unlimited in his ability to use hand and foot controls.  Plaintiff was capable of climbing, stooping, kneeling, and crawling occasionally and balancing frequently; he would have to avoid working around machinery and heights.

On May 11, 2012, went to Franklin PHC for complaints of bilateral knee and lower back pain; he was advised to use a cane (Tr. 637-39).

On May 23, 2012, Kenneth Randall Starkey, Psy.D., performed a consultative psychological evaluation and found Plaintiff to be of low average range of intellectual functioning; insight and judgment seemed generally adequate (Tr. 625-28).  Chapman's diagnosis was Antisocial Personality Disorder; a secondary diagnosis was Adjustment Disorder with Depressed Mood in full remission.  Starkey reported a GAF of 64.[3]  He thought

---

[3] A GAF score between 61 and 70 indicates "[s]ome symptoms OR some difficulty in social, occupational, or school functioning, but

5

Plaintiff's prognosis was guarded, but that his motivation was good. As for functional capacity, the Psychologist stated:

> Mr. Chapman's ability to understand, remember, and carry out simple/concrete instructions appears good (from a psychological perspective). His ability to work independently (vs. with Close Supervision) appears adequate (especially for simple/concrete tasks he has been instructed to complete). His ability to work with supervisors, co-workers and the general public appears marginal (at the present time). His ability to work with job pressures also appears marginal. If awarded disability benefits, Mr. Chapman should be able to manage these benefits without the need for assistance.

(Tr. 628).

On August 13, 2012, Plaintiff went to Franklin PHC for back and left ankle pain that he rated as ten on a ten-point scale; Lortab[4] was prescribed (Tr. 633-36). On November 16, Chapman returned to Franklin PHC for treatment of his hypertension, diabetes, and left ankle pain; the ankle was tender, with minimal swelling, and moderate pain with motion (Tr. 652-57). The lumbar spine was tender with moderate pain on motion. Gait was antalgic. An x-ray of the left ankle demonstrated arthritic change involving the tibial talar joint and calcaneal spurring.

---

generally functioning pretty well, has some meaningful interpersonal relationships." *See* https://depts.washington.edu/washinst/Resources/CGAS/GAF%20Index.htm

[4]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

On January 16, 2013, Plaintiff complained of back and joint pain, but made no mention of his ankle; there was no joint swelling or muscle weakness (Tr. 648-51).  On March 18, right shoulder examination demonstrated tenderness and acute pain in the AC joint with crepitus; strength tests of the supraspinatus and external rotation were abnormal (Tr. 641-45).  Pain limited ROM.  Left shoulder examination was normal.  An x-ray of the left shoulder confirmed prior surgical history;[5] a chest x-ray showed no acute disease (Tr. 646).

On January 22, 2013, Plaintiff was admitted to Mobile Infirmary for eight nights, through the Emergency Room, after a week of shortness of breath, by Dr. Uzoije; his discharge diagnosis included, among other things, acute exacerbation of chronic obstructive pulmonary disease and atrial fibrillation with rapid ventricular response (Tr. 666-725).  He was noted to have mild congestive heart failure.  On discharge, Chapman was to follow up with Franklin and cardiology doctors.

On February 28, Chapman was examined by Dr. Stanley N. Thornton of Cardiology Associates, complaining of shortness of breath, left shoulder pain, and numbness in his right hand pinky finger; Plaintiff reported no limb pain or swelling or muscle weakness or aches (Tr. 659-65).  Chapman had an irregular heart

---

[5]On May 3, 2015, Plaintiff stated that he had never had surgery on his left shoulder (Tr. 733).

7

rate; musculoskeletal examination was normal. Dr. Thornton's assessment was obstructive sleep apnea, coronary artery disease, atrial fibrillation, hypertension, and diastolic and systolic congestive heart failure for which his prescription medication regimen was changed. On April 12, 2013 Plaintiff returned to see Dr. Thornton, complaining of shoulder pain he asserted to be dislocated; he was referred to an orthopedic doctor (Tr. 810-14). The cardiovascular examination was normal.

On May 3, Plaintiff went to Franklin PHC for left shoulder (rotator cuff) pain (Tr. 731-34). Examination showed left shoulder tenderness and pain with ROM as well as right knee tenderness; he walked with a cane.

On May 21, Cardiologist Thornton completed a heart questionnaire indicating that Plaintiff had a class II heart condition that would moderately limit his ability to work (Tr. 726-27). The Doctor declined to say whether or not Chapman could work an eight-hour day. He noted that fatigue was a factor but would not prevent functioning in everyday activities or work; physical activity would increase fatigue, but would not prevent adequate functioning. Thornton also stated that the fatigue would not require reclining or napping.

On May 24, Plaintiff was admitted to Mobile Infirmary, for three days, for complaints of shortness of breath and a cough for four days; he denied chest pain, but exhibited leg swelling,

arthralgias and left shoulder pain (Tr. 748-809). The musculoskeletal exam demonstrated some edema, normal ROM, and no tenderness. Chapman was discharged, in stable condition with the following diagnoses: congestive heart failure, acute asthma exacerbation, diabetes mellitus, hypertension, and hypokalemia; Plaintiff was told to follow up with his doctor at Franklin in a week. On June 23, Chapman returned to the Infirmary for left shoulder pain he rated at six; there was no numbness or radiation (Tr. 740-47). On exam, he had normal ROM. He was in stable condition and diagnosed to have chronic pain syndrome; Ultram[6] was prescribed (Tr. 728-30).

On June 28, 2013, Dr. Andre J. Fontana, Orthopaedic Surgeon, examined Chapman for left shoulder discomfort, lower back pain, and a history of other impairments; he walked without assistance (Tr. 737-39). In the cervical spine, Plaintiff had 45° flexion, 45° rotation to the right and left, and 15° lateral flexion to the left and right; grip strength was 5/5. Chapman had full ROM in the left shoulder with some popping and a little tenderness over the acromioclavicular joint. Heel and toe gait were good, though Plaintiff walked with a slight waddling gait; motor was 5/5. Straight leg raise was 90° sitting and 70° supine. ROM in the left hip was 0 degrees of internal rotation;

---

[6]**Error! Main Document Only.***Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

9

right hip had full range of internal and external rotation. There was minimal crepitus in his right knee with no apparent swelling.  Fontana's impression was right knee arthritis, history of degenerative disk disease of the lumbar spine, possible ulnar nerve entrapment of the right hand, and possible AC joint injury of the left shoulder.  The Orthopaedic stated that Chapman "should not do any pushing or pulling with heavy arm controls of the left arm.  No lifting over 20 pounds, no climbing, no kneeling, no crawling.  He cannot be around moving machinery" (Tr. 737).  The Doctor said that he had considered the evidence provided in making his assessment.  On July 15, 2013, Fontana completed a physical capacities evaluation in which he indicated that Plaintiff could sit, stand, and walk for eight hours at a time and during the day; he could lift and carry up to twenty-five pounds occasionally and five pounds frequently (Tr. 736).  Chapman could perform simple grasping in either hand, fine manipulation in the left hand, but could not use arm controls in either arm; the Orthopaedic did not express an opinion as to whether or not Plaintiff could use leg controls.  Chapman could reach frequently, bend and squat occasionally, but could never crawl or climb; he was mildly restricted in driving automotive equipment, moderately restricted in being around moving machinery, and totally restricted in being around unprotected heights.

10

This concludes the Court's summary of the evidence.

In bringing this action, Chapman claims that the ALJ did not properly consider the medical evidence, substituting his opinion for those of the doctors in fashioning his residual functional capacity (hereinafter *RFC*) (Doc. 12, pp. 2-6). Plaintiff specifically takes issue with the weight given to Dr. Fontana and non-examiner McCants.

The Court notes that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2013). That decision cannot be based on "sit and squirm" jurisprudence. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984). However, the Court also notes that the social security regulations state that Plaintiff is responsible for providing evidence from which the ALJ can make an RFC determination. 20 C.F.R. § 416.945(a)(3) (2015). The Court further notes that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[7] *see also* 20 C.F.R. § 416.927.

In his determination, the ALJ found that Chapman had the "residual functional capacity to perform light work as defined

---

[7]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

11

in 20 C.F.R. 416.967(b)[8] with additional limitations.  The claimant can do work that does not require climbing, kneeling, crawling, or pushing or pulling.  The claimant can do work that permits him to avoid hazards, dangerous machinery, and heights" (Tr. 25).  After summarizing the medical evidence, the ALJ gave significant weight to the conclusions of Cardiologist Thornton and Orthopaedic Surgeon Fontana, great weight to SDM McCants, moderate weight to Clinical Psychologist Starkey, and little weight to Psychologist Hinton (Tr. 28-31).  The ALJ also found that Chapman's testimony of pain and limitations were not credible to the extent alleged (Tr. 31-32), a finding unchallenged in this action.

In addressing the evidence provided by Fontana, the ALJ specifically found "that the record [was] not consistent with the conclusion that the claimant [was] limited to only occasionally lifting and carrying six to ten pounds" (Tr. 30).  The balance of the ALJ's evaluation of Fontana's opinions is as

---

[8]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time" (footnote not in original).

follows:

> The claimant's clinical signs have been consistent with the conclusions that the claimant retained a significant portion of his functionality. Specifically, the undersigned notes that the record includes clinical signs of only "a slight" waddling gait, a "good" toe and heel gait, intact sensation, five of five strength of his lower extremities, only "a minimal amount" of crepitus regarding his right knee, no appearance of swelling, no atrophy of the right shoulder and normal right shoulder strength, and 90 degrees of movement during a straight-leg raising examination when in a sitting position and 70 degrees during a straight-leg raising examination when in a supine position (Exhibits B10F/2-6 and B16F). As the record is generally consistent with these medical opinions, the undersigned gives significant weight to these medical opinions.

(Tr. 30).

The Court notes, as Plaintiff has pointed out, that the ALJ's finding that Chapman is capable of frequently lifting and carrying of ten pounds places him squarely within the light work requirements and at odds with Dr. Fontana's conclusion. If the ALJ had accepted the Orthopaedic's conclusion, Plaintiff would be only capable of, at most, sedentary work.

The Court agrees with Plaintiff that the overall record provides evidence that supports Fontana's conclusion and that is contrary to the ALJ's conclusion. Specifically, an x-ray in April 2011 demonstrated moderate degenerative joint disease in

the knees bilaterally (Tr. 550). An x-ray of the lumbar spine in April 2012 demonstrated marked degenerative changes; an x-ray of the knees showed mild degenerative changes bilaterally (Tr. 623). In May 2012, Chapman was advised to use a cane (Tr. 637-39). An x-ray of the left shoulder in March 2013 demonstrated previous surgery though there had been none (Tr. 646, 733). An examination at Franklin in March 2013 showed tenderness, crepitus, and abnormal strength tests in the supraspinatus and external rotation strength tests of the right shoulder; though there was full ROM, pain was a limiting factor (Tr. 643).

These records, when considered cumulatively, cast serious doubt on the ALJ's rejection of Dr. Fontana's conclusion that Chapman can lift and carry only up to five pounds on a frequent basis. Though the ALJ accepted the majority of the Orthopaedic Surgeon's opinions, the rejection of this limitation is not supported by substantial evidence. This conclusion gains strength in the fact that it is provided by an examining specialist who provided the only physical capacities evaluation in this record.[9]

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evi-

---

[9] The Court further notes that SDM McCants concluded that Plaintiff could lift and carry only ten pounds, but that conclusion was based on evidence pre-dating much of the evidence cited herein as support for Fontana's decision and was made without examination.

14

dence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for a determination of Chapman's ability to work.  Judgment will be entered by separate Order.

DONE this 10th day of December, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
